No. 2--05--1168        Filed: 6-5-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ALLIANZ INSURANCE COMPANY, ZURICH SPECIALTIES LIMITED, GERLING KONZERN ALLGEMEINE VERSICHERUNGS-AG, LIBERTY INTERNATIONAL INSURANCE COMPANY, AMERICAN INTERNATIONAL LINES INSURANCE COMPANY, WESTCHESTER FIRE INSURANCE COMPANY, AND LUMBERMENS MUTUAL CASUALTY COMPANY, | ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 03--L--1178 |
| GUIDANT CORPORATION, | ) ) | |
| Defendant-Appellant | ) ) | |
| (Endovascular Technologies, Inc., Guidant Sales Corporation, Advance Cardiovascular Systems, Inc., and Origin Medsystems, Inc., Defendants). | ) ) ) ) ) | Honorable Bonnie M. Wheaton, Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant Guidant Corporation appeals from an order of the circuit court of Du Page County holding it in contempt of court for refusing to produce certain materials demanded by plaintiff Allianz Insurance Company. Guidant was assessed a fine of $100 per day for each day it refused to comply with the circuit court's order. For the reasons that follow, we find that the circuit court

correctly determined that (1) Illinois law applies in deciding whether the materials at issue are privileged and (2) under Illinois law neither the attorney-client privilege nor the work-product doctrine is available to shield the sought-after materials. However, we vacate the order of contempt.

## I. BACKGROUND

The following facts are taken from the record on appeal as well as our previous opinion in an earlier, related case. See Allianz Insurance Co. v. Guidant Corp., 355 Ill. App. 3d 721 (2005). Guidant is an Indiana corporation with its principal place of business in Indiana. Endovascular Technologies, Inc. (EVT), is a wholly owned subsidiary of Guidant. EVT is organized under the laws of Delaware with its principal place of business in California. Guidant, through EVT, developed and manufactured a medical device known as the Ancure Endograft System (Ancure Device). The Ancure Device was used to treat abdominal aortic aneurysms, a potentially life-threatening condition arising from the development of a weak area in the wall of the aorta. Guidant and some of its subsidiaries have been sued in various states in numerous product liability actions involving alleged defects of the Ancure Device (the underlying claims).

Allianz, a California corporation with its principal place of business in California, issued a "claims made" umbrella-liability policy to Guidant for the period from September 1, 2000, to September 1, 2001. The Allianz policy provided that if a claim is made or suit is brought against any insured, the insured must:

"(i)     Immediately send [Allianz] copies of any demands, notices, summonses or other legal papers received in connection with the Claim or suit;

(ii)     Authorize [Allianz] to obtain records and other information;

> > (iii) Cooperate with [Allianz] in the investigation, settlement or defense of the Claim or suit;
> >
> > (iv) Assist [Allianz], upon [its] request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which insurance may also apply."

Guidant later renewed the umbrella-liability policy by extending the coverage for the period from September 1, 2001, to September 1, 2002. In addition, six additional insurers, Zurich Specialties London Limited (Zurich), Gerling Konzern Allgemiene Versicherungs-AG (Gerling), Liberty Mutual Insurance Company (Liberty), American International Specialty Lines Insurance Company (AISLIC), Westchester Fire Insurance Company (Westchester), and Lumbermens Mutual Casualty Company (Lumbermens), provided Guidant with excess product-liability coverage during the same time periods.

After Guidant procured the aforementioned policies, it tendered the underlying claims to its product-liability insurers. By a letter dated October 20, 2003, Allianz "disclaim[ed] coverage" for the underlying claims and advised Guidant of "certain further reservations of rights." Then, on November 6, 2003, Allianz filed a four-count complaint against Guidant (the insurance-coverage litigation). Count I of Allianz's complaint alleged common-law fraud on the basis that Guidant made "false representations and concealed and failed to disclose the status of the Ancure product defects and claims arising therefrom in the course of Guidant's application for" insurance coverage, "[knowing] that such representations were false," in order to secure insurance from Allianz. Allianz's complaint also sought rescission of the insurance policies for fraud (count II), rescission

for mutual mistake (count III), and a declaration that the policies issued to Guidant do not provide coverage for claims, losses, or liabilities related to the Ancure Device (count IV).

Shortly after Allianz sued Guidant in Illinois, Guidant and some of its subsidiaries filed suit in Marion County, Indiana, against Allianz and each of the six other insurers, seeking a declaration that Allianz must defend the underlying claims and that each of the insurers must indemnify Guidant for such claims. The Indiana court entered an order staying the Indiana action pending resolution of Allianz's fraud claim against Guidant in Illinois.

Meanwhile, on February 17, 2004, Guidant filed a counterclaim against Allianz, seeking declaratory relief and alleging breach of contract. Among other things, Guidant alleged in its counterclaim that Allianz "is obligated to defend [Guidant] against the Underlying Claims" and that Guidant "is entitled to reimbursement and indemnity for damages because of the Underlying Claims." Guidant also moved to dismiss the rescission counts of Allianz's complaint. The trial court granted Guidant's motion, and Allianz repleaded the rescission counts as affirmative defenses. On June 18, 2004, Zurich, Gerling, and Liberty were granted leave to intervene in the insurance-coverage litigation. The intervenors then filed their own complaint against Guidant, naming AISLIC, Westchester, and Lumbermens as third-party defendants. The third-party defendants filed cross-claims against Guidant, claiming that they are entitled to a declaration that their polices do not provide coverage.[1] Thereafter, the Insurers were granted leave to file claims against four Guidant subsidiaries. All claims filed against Guidant and its subsidiaries were later consolidated into one complaint.

---

[1]We refer collectively to Allianz, the intervenors, and the third-party defendants as the "Insurers."

On February 18, 2005, Allianz filed a motion to issue out-of-state subpoenas to consultants hired by Guidant to investigate alleged regulatory deficiencies with the Ancure Device. Allianz alleged that the consultants possessed (1) information relating to the insurance-coverage litigation and (2) documents that are relevant and admissible at trial or will lead to the discovery of admissible evidence. Allianz argued that the consultants' materials were discoverable under Illinois law because the supreme court has held that an insured may not withhold, on the basis of privilege, any documents that relate to the insurance claims that the insured tendered to the insurer. See Waste Management, Inc. v. International Surplus Lines Insurance Co., 144 Ill. 2d 178 (1991). Guidant opposed Allianz's motion and moved the trial court to enter a protective order. Guidant asserted that it was entitled to a protective order because the discovery sought by Allianz is "entirely irrelevant to this litigation" and "otherwise protected from disclosure by the work-product doctrine and/or the attorney-client privilege." With respect to Guidant's latter claim, it asserted that California law-- EVT's state of incorporation, the location of its headquarters, and where it retained the consultants-- governed the discoverability of the documents at issue, that California courts have rejected the reasoning of Waste Management, and that, even if Illinois law applies, Waste Management is factually distinguishable from the present case.

On April 11, 2005, the trial court determined that whether the documents requested by Allianz in its February 17, 2005, motion were protected by a privilege was a procedural issue. As such, it applied the choice-of-law test set forth in Sterling Finance Management, L.P. v. UBS PaineWebber, Inc., 336 Ill. App. 3d 442 (2002), and held that Illinois law applied to the issue of privilege raised in Allianz's motion. At the same time, the court held that "this case appears to be a case of first impression under the fact scenario that is presented." The court recognized that the

facts in Waste Management "appear to be considerably different" from the facts before the court in this case. Notably, the files requested by Allianz in its February 17, 2005, motion were created in relation to an investigation of alleged regulatory defects with the Ancure Device and not in the course of defending the underlying claims. Thus, the court declined to extend the holding of Waste Management to the documents in the consultants' files and opted to determine on a document-by-document basis whether any of the documents in the consultants' files were privileged.

Meanwhile, on February 11, 2005, Allianz served a set of document requests seeking production of:

"REQUEST NO. 55

All files maintained by any of your lawyers with respect to the Underlying Claims and Future Underlying Claims, as you use and define[] those terms in your Counterclaim against Allianz.

REQUEST NO. 56

Any and all communications between you and any of your lawyers with respect to the Underlying Claims and Future Underlying Claims."

Guidant objected to producing any documents responsive to these requests, citing various reasons, including a generalized "Privilege or Work Product" objection.

On July 7, 2005, Allianz filed a motion to compel the production of the documents referenced in requests 55 and 56. In its motion, Allianz argued that the requested materials were relevant and "at issue" in the declaratory judgment action because Guidant's counterclaim requests (1) insurance coverage from Allianz for "Underlying Claims made against Guidant and its subsidiaries [that] seek[] damages arising from Personal Injury and other claims allegedly caused by the Ancure

[Device]" and (2) a declaration that Allianz must pay the "defense costs incurred and to be incurred by Guidant as a result of" the underlying claims. Allianz asserted that under the supreme court's decision in Waste Management, the attorney-client privilege and the work-product doctrine do not protect the files of an insured's attorney where those files relate to litigation for which the insured seeks insurance coverage. Guidant filed a response to Allianz's motion to compel and attached a privilege log. In addition, Guidant filed a partial motion to reconsider the court's April 11, 2005, ruling on choice of law. In particular, Guidant asserted that the trial court incorrectly deemed procedural the privilege issue raised in Waste Management and that the court applied the wrong choice-of-law test to conclude that Illinois law governed whether the materials requested by Allianz were privileged.

On September 7, 2005, the trial court convened a hearing on Allianz's motion to compel and Guidant's motion to reconsider. After hearing argument, the court denied Guidant's motion to reconsider. The court then granted Allianz's motion to compel production of the materials in requests 55 and 56. In making the latter decision, the court acknowledged that this case "goes farther than Waste Management in that *** there are claims for fraud and fraud in the inducement." Nevertheless, the court found that like the insurance policy at issue in Waste Management, the parties' contract for insurance contained a "cooperation clause" and therefore a "special relationship" exists between the parties until the court "either rescinds [the contract] or declares that there is no duty to defend or indemnify." As a result, the court concluded that the Waste Management decision "applies to the declaratory judgment aspect of this case." Recognizing, however, that no court had extended the holding of Waste Management to a "fraud or other tort action," the court granted the motion to compel "with the limitation that anything that would otherwise be privileged except in a

Waste Management type case cannot be used in anything other than the declaratory judgment action." The court then entered an order memorializing its oral pronouncements.[2]

On October 7, 2005, Guidant filed a motion for certification pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)) of the issues raised in the court's September 7, 2005, order. At a hearing on October 26, 2005, the trial court denied Guidant's motion. At the same hearing, Guidant informed the court that it did not intend to comply with the September 7, 2005, order. Accordingly, the court held Guidant in civil contempt and ordered it to pay a fine of $100 per day "for every day it does not comply with the September 7, 2005 order." The court stayed payment of the fine pending Guidant's appeal. Guidant filed a notice of appeal from the trial court's October 26, 2005, order on November 22, 2005. We have jurisdiction over this appeal pursuant to Supreme Court Rule 304(b)(5) (210 Ill. 2d R. 304(b)(5)).

## II. ANALYSIS

### A. Choice of Law

The principal issue on appeal is whether, under Illinois choice-of-law rules, the law of Illinois or the law of a foreign jurisdiction applies in determining whether the materials sought by Allianz in requests 55 and 56 are protected by the attorney-client privilege or the work-product doctrine. According to Guidant, the determination of whether a court should recognize a particular privilege is a question of substantive right, guided by the "most significant contacts" choice-of-law test. Guidant adds that under the proper choice-of-law analysis, it is clear that either California or Indiana law applies. As such, Guidant asserts that the trial court erred in applying Waste Management to

---

[2]Initially, the other insurers did not join Allianz's motion to compel. However, they successfully moved the trial court to extend the September 7, 2005, order to them.

hold that neither the attorney-client privilege nor the work-product doctrine was available to shield the communications sought in this case. Allianz counters that Sterling Finance and this court's more recent decision in People v. Allen, 336 Ill. App. 3d 457 (2003), dictate the application of section 139 of the Restatement (Second) of Conflict of Laws (Restatement (Second) of Conflict of Laws §139 (1971)) to resolve this choice-of-law dispute. Allianz posits that under section 139 of the Restatement (Second) of Conflict of Laws, Illinois law applies to determine whether the documents requested in the motion to compel are privileged. Allianz further asserts that pursuant to Waste Management, neither the attorney-client privilege nor the work-product doctrine applies. We review de novo a circuit court's determination on a choice-of-law issue. Malatesta v. Mitsubishi Aircraft International, Inc., 275 Ill. App. 3d 370, 384 (1995).

### 1. Does a Conflict Exist?

Choice-of-law considerations are not implicated unless there is an actual conflict of law among the various states with an interest in a particular dispute. Sterling Finance, 336 Ill. App. 3d at 447; Malatesta, 275 Ill. App. 3d at 374. An actual conflict exists if the outcome of a dispute will differ depending on which state's law is applied. Sterling Finance, 336 Ill. App. 3d at 447. In this case, the parties present three potential jurisdictions with an interest in this litigation: California, Indiana, and Illinois. Therefore, our first task is to determine if an application of the relevant law of these forums would result in different outcomes. If the law of these jurisdictions is essentially the same on the issue in dispute, there is no need to conduct a choice-of-law analysis. Sterling Finance, 336 Ill. App. 3d at 447.

The Sterling Finance court noted that in the typical choice-of-law case involving a privilege, one state has a privilege that is nonexistent in the other state. Sterling Finance, 336 Ill. App. 3d at

447. In this case, however, both the attorney-client privilege and the work-product doctrine are recognized in the three jurisdictions that the parties claim to have an interest in this litigation. See Cal. Bus. & Prof. Code §6068(e) (1993); Cal. Evid. Code §954 (West 2004) (attorney-client privilege); Cal Civ. Proc. Code §2018.030 (West 2004) (work-product doctrine); Ind. Code §34--46--3--1 (West 2004) (attorney-client privilege); Ind. Trial Rule 26(B)(3) (West 2004) (work-product doctrine); 210 Ill. 2d R. 201(b)(2) (attorney-client privilege and work-product doctrine). Guidant suggests, however, that there is arguably a conflict between Illinois law and the law of California and Indiana because the latter states interpret the attorney-client privilege and the work-product doctrine more broadly than our supreme court did in Waste Management. See Sterling Finance, 336 Ill. App. 3d at 447-48 (holding that the "potential difference in the scope of the corporate attorney-client privilege" arguably creates a conflict); see also Allen, 336 Ill. App. 3d at 458-59 (noting that although both Iowa and Illinois recognize the physician-patient privilege, the difference in the privilege's scope creates a conflict). We begin with a review of Waste Management.

2. Waste Management

In Waste Management, the insureds, the owners and operators of several hazardous waste disposal sites, purchased insurance from two insurers. The policies provided indemnity to the insureds for defense costs arising out of any environmental claims filed against the insureds. However, the duty to indemnify was subject to certain exclusions and conditions, including the insureds' "duty to cooperate." The "duty to cooperate" was memorialized in the policies as a "cooperation clause," which imposed upon the insureds "the duty to assist [the] insurers in the conduct of suits and in enforcing any right to contribution or indemnity against persons potentially liable to [the] insureds." Waste Management, 144 Ill. 2d at 192. In addition, the policies provided

-10-

that the insurers were "entitled to conduct any claim, in the name of [the] insureds, for indemnity or damages against persons" and that the insureds "shall give all such information and assistance as the insurers may reasonably require." Waste Management, 144 Ill. 2d at 192.

The insureds defended and settled two lawsuits brought by parties alleging the migration of toxic waste from the insureds' waste disposal sites (the environmental litigation). The insureds later sought indemnification from the insurers for settlement and defense costs. After the insurers "denied coverage," both parties filed declaratory judgment actions seeking a determination of their rights and liabilities under the policies. During discovery, the insurers requested production of defense counsel's files in the environmental litigation. The insureds withheld some of the requested information, asserting the attorney-client privilege and the work-product doctrine. The trial court ordered the production of the files from one of the environmental cases, but denied production of the files in the other case. The insureds refused to comply with the order, and the trial court held one of the insureds' attorneys in contempt of court. The insureds and the attorney held in contempt appealed. The appellate court held that the insurers were entitled to all of the requested documents.

On appeal, the supreme court began its discussion by acknowledging Illinois's strong public policy favoring complete disclosure in litigation:

" 'The purpose of the attorney-client privilege is to encourage and promote full and frank consultation between a client and legal advisor by removing the fear of compelled disclosure of information.' [Citation.] However, the privilege is not without conditions, and we are mindful that it is the privilege, not the duty to disclose, that is the exception. [Citation.] Therefore, the privilege ought to be strictly confined within its narrowest possible limits. Further, the attorney-client privilege is limited solely to those communications which

the claimant either expressly made confidential or which he could reasonably believe under the circumstances would be understood by the attorney as such. [Citation.] Finally, we note that in Illinois, we adhere to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit. [Citation.]" Waste Management, 144 Ill. 2d at 190.

The court later emphasized that Illinois has also "taken a narrow approach" as to what materials are protected by the work-product doctrine, reiterating that the "overriding considerations under our discovery rule are ascertainment of the truth and expedited disposition" of litigation. Waste Management, 144 Ill. 2d at 196. In light of these policy concerns, the supreme court held that the attorney-client privilege and the work-product doctrine were not available as between the insurers and the insureds in the insurance-coverage litigation. Waste Management, 144 Ill. 2d at 195, 200.

The supreme court offered two reasons why the attorney-client privilege was not available to shield the documents requested by the insurers. First, the court concluded that the plain language of the insurance policies' "cooperation clause" created "contractual obligations" requiring the insureds to disclose to the insurers "any communications they had with defense counsel representing them on a claim for which [the] insurers had the ultimate duty to satisfy." Waste Management, 144 Ill. 2d at 192. Notably, the court stated that the clause imposed a "broad duty of cooperation and is without limitation or qualification." Waste Management, 144 Ill. 2d at 192. Accordingly, the supreme court concluded that a "fair reading" of the insurance policies rendered any expectation of attorney-client privilege unreasonable. Waste Management, 144 Ill. 2d at 192-93.

Second, the supreme court found the attorney-client privilege inapplicable in light of the "common interest" doctrine. Waste Management, 144 Ill. 2d at 193-95. The common-interest

doctrine provides that "when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties." Waste Management, 144 Ill. 2d at 193. The court noted that typically, the common-interest doctrine applies where an attorney has provided joint or simultaneous representation of the parties. Waste Management, 144 Ill. 2d at 194. However, the court also found the doctrine applicable where the attorney, though neither retained nor in direct communication with the insurer, acts for the mutual benefit of both the insured and the insurer. Waste Management, 144 Ill. 2d at 194. The Waste Management court concluded that "in a limited sense," the insureds' attorney did represent the insurers in the underlying environmental litigation since the insurers were ultimately liable if the plaintiffs in the underlying action received a favorable verdict or settlement. Waste Management, 144 Ill. 2d at 194-95. Since both the insurers and the insureds had a "common interest" in either defeating or settling the underlying environmental litigation, the attorney-client privilege was inapplicable. Waste Management, 144 Ill. 2d at 194-95.

Likewise, the Waste Management court concluded that the case did not "fit within the parameters" of the work-product doctrine. Waste Management, 144 Ill. 2d at 197. The court pointed out that in the typical case, the sought-after material is generated in preparation for trial against an adversary who may seek disclosure of his opponent's work product. Waste Management, 144 Ill. 2d at 196. However, the materials requested in Waste Management were prepared for the mutual benefit of the insureds and the insurers against a third-party adversary. Waste Management, 144 Ill. 2d at 198-99. In other words, because the requested materials were not prepared in anticipation of the declaratory judgment action in which the discovery was sought, the work-product doctrine was inapplicable. Waste Management, 144 Ill. 2d at 198-99. The court rejected the insureds' claim that

the information requested by the insurers "may be gleaned from objective facts, contained outside the contents of defense counsel's files." Waste Management, 144 Ill. 2d at 199. The court pointed out that "what [the] insurers seek to discover is *** the mental impressions and case assessment of defense counsel" and that there is "no source, outside the files, where this information might be obtained." Waste Management, 144 Ill. 2d at 199.

The court added that even if the work-product doctrine applied, the sought-after materials would still be subject to disclosure pursuant to the "at issue" exception to the doctrine. Waste Management, 144 Ill. 2d at 199-200. The "at issue" exception permits discovery of work product where the sought-after material is either the basis of the lawsuit or the defense thereof. Waste Management, 144 Ill. 2d at 199-200. The court held that where, as in the underlying environmental litigation, an attorney represents the common interests of two or more clients whose relationship later becomes adverse, and, in a subsequent action, the work product of the attorney is at issue, the work-product doctrine is not available to bar discovery by one of the original parties. Waste Management, 144 Ill. 2d at 200.

### 3. Application of Waste Management

We are bound to follow the decisions of our supreme court. People v. Trimarco, 364 Ill. App. 3d 549, 556 (2006). Both this case and Waste Management share many factual and procedural similarities. As a result, applying the rationale of the Waste Management decision to the facts before us leads to the conclusion that the communications requested by Allianz in its motion to compel are not privileged under Illinois law.

As in Waste Management, the insurance policy between Guidant and Allianz contains a "cooperation clause." That clause includes a promise by Guidant to "[c]ooperate with [Allianz] in

-14-

the investigation, settlement or defense of [any c]laim or suit." The "cooperation clause" also requires Guidant to "[a]ssist" Allianz, upon request, "in the enforcement of any right against any person or organization which may be liable to [Guidant]." Further, like the insurers and the insureds in Waste Management, Allianz declined coverage for the Ancure Device claims and both Allianz and Guidant filed competing declaratory judgment actions. In addition, the materials requested by Allianz in this case and the materials requested in Waste Management are similar. In Waste Management, the insurers requested "defense counsel's files." Waste Management, 144 Ill. 2d at 187. In this case, Allianz's motion to compel requests "[a]ll files maintained by any of [Guidant's] lawyers with respect to the Underlying Claims and Future Underlying Claims" and "[a]ny and all communications between [Guidant] and any of [its] lawyers with respect to the Underlying Claims and Future Underlying Claims." Guidant refused to produce the requested communications on the basis of the attorney-client privilege and the work-product doctrine. The trial court disagreed with Guidant's position and held Guidant in contempt of court.

Applying Waste Management to these facts renders the attorney-client privilege inapplicable to the materials sought to be discovered. First, as Waste Management teaches, the "cooperation clause" in Guidant's policy with Allianz constitutes a "contractual obligation." The language of the "cooperation clause" in Allianz's policy with Guidant is not identical to the language in the "cooperation clause" at issue in Waste Management. Nevertheless, a "fair reading" of the plain language of the "cooperation clause" at issue in this case indicates that the clause imposes a "broad duty of cooperation" that is "without limitation or qualification." Waste Management, 144 Ill. 2d at 192. The clause requires Guidant to (1) "[c]ooperate" with Allianz in the "investigation, settlement or defense" of any claim or suit and (2) "[a]ssist" Allianz, upon request,"in the

enforcement of any right against any person or organization which may be liable to [Guidant]."  In addition, Waste Management provides a second, independent basis to reject the application of the attorney-client privilege to this case: Guidant's counsel, though neither retained by nor in direct communication with Allianz or the other insurers, acts for the mutual benefit of both Guidant and its Insurers in the underlying Ancure Device claims.  Waste Management, 144 Ill. 2d at 194.  That is, both Guidant and the Insurers still have a "common interest" in defeating the underlying Ancure Device claims.

Further, although the work-product doctrine provides broader protection than the attorney-client privilege (Western States Insurance Co. v. O'Hara, 357 Ill. App. 3d 509, 517 (2005)), the doctrine does not apply to the materials requested by Allianz in its motion to compel.  As Allianz points out, the documents it requested in its motion to compel were prepared for the Ancure Device litigation--a matter for which the interests of Allianz and Guidant are aligned.  In the words of our supreme court, the requested materials do not "fit within the parameters" of the work-product doctrine because they "were *** prepared for the mutual benefit of the insureds and the insurers." Waste Management, 144 Ill. 2d at 197-98.  In addition, there is no evidence that the information requested by Allianz may be obtained from any source outside of the requested documents.  Allianz seeks information regarding who at Guidant knew what and when about the potential Ancure Device claims and the potential exposure related to the Ancure Device, at the time Guidant submitted the two insurance applications at issue.[3]  In sum, under Illinois law as set forth in Waste Management,

---

[3]The Insurers also argue that Guidant placed the defense files "at issue."  Although the supreme court addressed a similar argument in Waste Management, it characterized the argument as "superfluous" in light of its acceptance of the insurers' other theories.  Waste Management, 144

neither the attorney-client privilege nor the work-product doctrine is available to bar discovery of the documents requested in Allianz's motion to compel.[4]

### 4. Law in Other Jurisdictions

Our research suggests that almost every foreign jurisdiction that has considered the holding of Waste Management has assailed the decision as unsound and improperly reasoned. See North River Insurance Co. v. Philadelphia Reinsurance Corp., 797 F. Supp. 363, 367-69 (D. N.J. 1992) (characterizing the Waste Management decision as "unduly broad" and rejecting its reasoning); Remington Arms Co. v. Liberty Mutual Insurance Co., 142 F.R.D. 408, 416-18 (D. Del. 1992) (refusing to follow Waste Management); Bituminous Casualty Corp. v. Tonka Corp., 140 F.R.D. 381, 386-87 (D. Minn. 1992) (deeming the rationale of the Waste Management court with respect to the attorney-client privilege as "fundamentally unsound" and finding the court's interpretation of the work-product doctrine "inconsistent" with local authority that extends the work-product doctrine to documents prepared in anticipation of all previous litigation); Eastern Air Lines, Inc. v. United States Aviation Underwriters, Inc., 716 So. 2d 340, 342-43 (Fla. App. 1998) (rejecting the Waste Management court's interpretation of the cooperation-clause exception to the attorney-client privilege on the grounds of state statutory law); Owens-Corning Fiberglas Corp. v. Allstate Insurance Co., 74 Ohio Misc. 2d 174, 181, 660 N.E.2d 765, 769 (1993) (noting that the Waste Management court's interpretation of the common-interest exception to the attorney-client privilege is "outweighed" by

---

Ill. 2d at 191. We agree that addressing the Insurers' "at issue" argument would be superfluous in this case and opt not to address it.

[4]Guidant makes several attempts to distinguish Waste Management. These arguments, which we ultimately find unpersuasive, are addressed elsewhere in this decision.

contrary authority); State v. Hydrite Chemical Co., 220 Wis. 2d 51, 74-78, 582 N.W.2d 411, 420-22 (1998) (declining the notion that a "broadly-worded cooperation clause" supercedes the attorney-client privilege or work-product doctrine and rejecting the common-interest exception to the attorney-client privilege as set forth in Waste Management); see also Imperial Corp. of America v. Shields, 167 F.R.D. 447, 452 (S.D. Cal. 1995) (noting that Waste Management has been "criticized and rejected by most courts"); Northwood Nursing & Convalescent Home, Inc. v. Continental Insurance Co., 161 F.R.D. 293, 297 n.3 (E.D. Pa. 1995) (recognizing frequent criticism of the Waste Management decision).

One of the most vociferous critics of the Waste Management decision hails from California-- a jurisdiction whose law Guidant asserts is arguably applicable to the instant dispute. In Rockwell International Corp. v. Superior Court, 26 Cal. App. 4th 1255, 32 Cal. Rptr. 2d 153 (1994), the California Court of Appeal refused to adopt the rules set forth in Waste Management. At issue in Rockwell was whether an insurance policy's cooperation clause operated as a waiver of the insured's attorney-client privilege in coverage litigation between the insured and its insurers. The insurers in Rockwell relied on Waste Management. However, the appellate court found "several problems" with that decision. Rockwell, 26 Cal. App. 4th at 1262, 32 Cal. Rptr. 2d at 157. First, the California court refused to read the cooperation clause at issue as broadly as the clause interpreted by the Waste Management court. Rockwell, 26 Cal. App. 4th at 1262-63, 32 Cal. Rptr. 2d at 157. Second, the court noted that the insurers conceded that, at the time the cooperation clause was drafted, its drafter did not intend the clause to operate as a waiver of the attorney-client privilege in any situation. Rockwell, 26 Cal. App. 4th at 1263, 32 Cal. Rptr. 2d at 158. Most importantly for our purposes, the Rockwell court concluded that the Waste Management court's "cooperation clause" and "common

interest" doctrine analyses were inconsistent with California statutory law. Rockwell, 26 Cal. App. 4th at 1264, 1266-67, 32 Cal. Rptr. 2d at 158, 160. Rockwell therefore suggests that, in California, the materials requested by Allianz would not be subject to disclosure, under the attorney-client privilege.

Although the insurers in Rockwell also argued that the documents they requested were discoverable under the work-product doctrine, the court did not address the merits of this claim. Rockwell, 26 Cal. App. 4th at 1270, 32 Cal. Rptr. 2d at 162. Nevertheless, other cases suggest that California's attorney work-product doctrine is broader than this doctrine is in Illinois. The California statute codifying the attorney work-product doctrine states that any written documentation "that reflects an attorney's impressions, conclusions, opinions, or legal research or theories is not discoverable under any circumstances." (Emphasis added.) Cal Civ. Proc. Code §2018.030 (West 2004). The only exception to the attorney work-product doctrine in California is waiver. McKesson HBOC, Inc. v. Superior Court, 115 Cal. App. 4th 1229, 1239, 9 Cal. Rptr. 3d 812, 819 (2004). Waiver may occur "by failing to assert the protection, by tendering certain issues, and by conduct inconsistent with claiming the protection" or by "voluntary disclosure or consent to disclosure of the writing to a person other than the client who has no interest in maintaining the confidentiality of the contents of the writing." McKesson, 115 Cal. App. 4th at 1239, 9 Cal. Rptr. 3d at 819. If the materials requested by Allianz fit within the definition of work product as defined by California law, the waiver principle would not apply here. Guidant has rigorously asserted its claim that the sought-after materials are privileged. Moreover, there is no evidence before us indicating that the sought-after materials were privy to anyone but Guidant, its attorneys, and their related personnel. See BP Alaska Exploration, Inc. v. Superior Court, 199 Cal. App. 3d 1240, 1261, 245 Cal. Rptr. 682, 695-96

(1988) (discussing waiver exception). Thus, in California, it is likely that the work-product doctrine would bar the discovery of the materials requested in Allianz's motion to compel.

Guidant asserts that although there is no published decision from Indiana reviewing Waste Management, Indiana courts "recognize the sanctity of the attorney-client privilege and work-product doctrines and enforce them consistently in coverage cases." While the exact import of this statement is not apparent to us, we do acknowledge that Indiana courts have construed both the attorney-client privilege and the work-product doctrine more broadly than our supreme court. For instance, one Indiana court has noted that the attorney-client privilege "applies to all communications between the client and his attorney for the purpose of obtaining professional legal advice or aid regarding the client's rights and liabilities." (Emphasis added.) Corll v. Edward D. Jones & Co., 646 N.E.2d 721, 724 (Ind. App. 1995). It is also clear that in Indiana, opinion work product is entitled to nearly absolute immunity from discovery (see Penn Central Corp. v. Buchanan, 712 N.E.2d 508, 516 (Ind. App. 1999); Burr v. United Farm Bureau Insurance Co., 560 N.E.2d 1250, 1256 (Ind. App. 1990)) and that the doctrine applies to documents prepared in anticipation of other litigation (American Buildings Co. v. Kokomo Grain Co., 506 N.E.2d 56, 62 (Ind. App. 1987)).[5]

---

[5]Guidant also cites to an Indiana court order in the "parallel action" among the litigants of this case. According to that order, no Indiana court has adopted the reasoning of Waste Management and the decision "is stridently indifferent to Indiana's common law privileges." Guidant Corp. v. Allianz Insurance Co., No. 49D10--0311--PL--2073 (Marion, Indiana, Superior Court, October 10, 2005) (order denying antisuit injunction and lifting stay). While this order arguably supports Guidant's argument, it is unclear if that order was ever entered, as the copy of the order cited by Guidant is unsigned.

In sum, there is a dearth of authority supporting the Waste Management decision. California explicitly rejects the rationale of Waste Management with respect to the scope of the attorney-client privilege. In addition, California places a broad construction on the work-product doctrine. Likewise, courts in Indiana have construed both the attorney-client privilege and the work-product doctrine much more broadly than our supreme court has in Waste Management. As a result, we find that there is a true conflict between Illinois law and the law of California and Indiana as to whether the documents requested by Allianz are protected by the attorney-client privilege or the work-product doctrine. Therefore, we must engage in a choice-of-law analysis to determine the law applicable to Allianz's motion to compel. In doing so, we employ Illinois choice-of-law rules to determine which state's law applies. Sterling Finance, 336 Ill. App. 3d at 451.

### 5. Illinois Choice of Law

Guidant asks us to decide which state's law to apply under the "most significant contacts" test. According to Guidant, under that test, Indiana or California law would decide whether the attorney-client privilege and/or work-product doctrine apply in this case. Allianz counters that in deciding which state's law should determine the applicability of a particular privilege, Illinois courts follow section 139 of the Restatement (Second) of Conflict of Laws.

When faced with a claim of privilege in which there are factual connections to more than one state, courts in this country have employed various methods to determine which state's law applies. S. Bradford, Conflict of Laws and the Attorney-Client Privilege: A Territorial Solution, 52 U. Pitt. L. Rev. 909 (1991) (discussing the different approaches courts have used). However, in addressing choice-of-law issues, Illinois follows the Restatement (Second) of Conflict of Laws (hereinafter Restatement). Morris B. Chapman & Associates, Ltd. v. Kitzman, 193 Ill. 2d 560, 568 (2000)

("Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions"); Barbara's Sales, Inc. v. Intel Corp., 367 Ill. App. 3d 1013,1017 (2006), appeal allowed, 222 Ill. 2d 567 (2006); Allen, 336 Ill. App. 3d at 459; Sterling Finance, 336 Ill. App. 3d at 453 (and cases cited therein). Section 139 of the Restatement (Restatement (Second) of Conflict of Laws §139 (1971)) addresses privileged communications. This court recently invoked section 139 of the Restatement. Allen, 336 Ill. App. 3d at 459-61 (involving physician-patient privilege); see also Sterling Finance, 336 Ill. App. 3d at 453 (involving attorney-client privilege).

Guidant urges that the choice-of-law analysis under section 139 of the Restatement is not applicable in this case. According to Guidant, the trial court "took a wrong turn at the crossroads of substance and procedure, determining that the choice-of-law test for procedural matters as set forth in Sterling applied to Allianz's motion to compel." Guidant asserts that the applicability of a particular privilege is a substantive matter governed by the most-significant-contacts test. Courts applying the Restatement (First) of Conflict of Laws generally determined whether a particular issue was considered substantive or procedural. Restatement (First) of Conflict of Laws §§584, 585 (1934); 52 U. Pitt. L. Rev. at 916. However, the Restatement has abandoned the substantive-procedural dichotomy, at least with respect to the chapter of the Restatement of which section 139 is part. See Nelson v. Hix, 122 Ill. 2d 343, 346-47 (1988). In this regard, Comment b of section 122 of the Restatement (Restatement (Second) of Conflict of Laws §122, Comment b, at 352 (1971)) states that the provisions of chapter 6, including section 139, "do not attempt to classify issues as 'procedural' or 'substantive'." Consolidation Coal Co. v. Bucyrus-Erie Co., 93 Ill. App. 3d 35, 40 (1980) (suggesting that substantive-procedural dichotomy is irrelevant to analysis under section 139 of the Restatement), vacated on other grounds, 89 Ill. 2d 103 (1982); see also 52 U. Pitt. L. Rev. at

938-39; M. Hoffheimer, Mississippi Conflict of Laws, 67 Miss. L. J. 175, 214 n.118 (1997) (pointing out that the Restatement "explicitly avoids employing the distinction between substance and procedure to decide cases"); A. Deeks, Raising the Cost of Lying: Rethinking Erie for Judicial Estoppel, 64 U. Chi. L. Rev. 873, 901 (1997) (noting that section 139 of the Restatement "rejects a categorical 'substantive' or 'procedural' labeling of privilege rules"). Therefore, it is unnecessary for us to engage in such a discussion.

Section 139 of the Restatement provides:

"(1) Evidence that is not privileged under the local law of the state which has the most significant relationship with the communication will be admitted, even though it would be privileged under the local law of the forum, unless the admission of such evidence would be contrary to the strong public policy of the forum.

(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum will be admitted unless there is some special reason why the forum policy favoring admission should not be given effect." Restatement (Second) of Conflict of Laws §139 (1971).

The Restatement provides that the state with the most significant relationship with the communication is usually the state where the communication took place, i.e., "the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing." Restatement (Second) of Conflict of Laws §139, Comment e (1971).

Although Guidant disputes the applicability of section 139 of the Restatement, it argues that if that choice-of-law test is applicable, California or Indiana has the most significant relationship "to the issues raised by Allianz's motion to compel." The basis for Guidant's argument is the most-significant-contacts test derived from section 188(1) of the Restatement (Restatement (Second) of Conflict of Laws §188(1) (1971)). However, that provision applies to general contract questions. See Diamond State Insurance Co. v. Chester-Jensen Co., 243 Ill. App. 3d 471, 486 (1993); Illinois Tool Works, Inc. v. Sierracin Corp., 134 Ill. App. 3d 63, 69 (1985). As discussed above, section 139 of the Restatement determines which state's privilege law applies to a particular dispute. Guidant provides no discussion in its brief of why the materials requested by Allianz in its motion to compel have the most significant relationship with California or Indiana. In fact, it is unclear from the record which state has the most significant relationship with the materials requested in Allianz's motion to compel.

The sought-after materials include "[a]ll files maintained by [Guidant's] lawyers with respect to the Underlying Claims and Future Underlying Claims" and "[a]ny and all communications between [Guidant] and any of [its] lawyers with respect to the Underlying Claims and Future Underlying Claims." It is not clear from the record where the communications referenced in these requests occurred. The privilege log provided by Guidant indicates that the requested materials include communications involving, inter alia, Guidant's law firm (listed as Wheeler Trigg Kennedy, LLP), Guidant's "local counsel," and personnel of Guidant and its subsidiaries (EVT, Guidant Sales Corporation (GSC), Advanced Cardiovascular Systems (ACS), and/or Origin Medsystems (Origin)). From the record, we glean that: Guidant and GSC are Indiana corporations with their principal places of business in Indiana; EVT and Origin are Delaware corporations with their principal places of

business in California; ACS is a California corporation with its principal place of business in California; and Wheeler Trigg Kennedy, LLP is located in Colorado (see www.wtklaw.com/ index.php). Although the privilege log does not indicate who served as Guidant's "local counsel," we will presume that Guidant, as an Indiana corporation, employed counsel from Indiana. Despite this information, we are unable to conclusively determine "the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing." See Restatement (Second) of Conflict of Laws §139, Comment e (1971). Therefore, for the purposes of our discussion, we will assume, without deciding, that either California or Indiana is the state with the most significant relationship with the communications.

However, even if California or Indiana has a more significant relationship with the communications than Illinois, under section 139(2) of the Restatement (Restatement (Second) of Conflict of Laws §139(2) (1971)), the forum state will admit evidence that is not privileged under its local law but is privileged under the law of the state with the most significant relationship with the communication unless it finds that the local policy favoring admission is outweighed by countervailing considerations, i.e., some "special reason." Restatement (Second) of Conflict of Laws §139, Comment d (1971); Sterling Finance, 336 Ill. App. 3d at 454. In determining whether a "special reason" exists to exclude evidence, the forum will consider: (1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved; (2) the relative materiality of the evidence that is sought to be excluded; (3) the kind of privilege involved; and (4) fairness to the parties. Restatement (Second) of Conflict of Laws §139, Comment d (1971). Applying these factors to the case at bar, we find no "special reason" sufficient to override Illinois's pro-admission policy.

With respect to the first factor, Guidant asserts that Illinois "has no connection whatsoever to the communications between" Guidant and its attorneys. At this stage of the analysis, however, the number and nature of the contacts that the forum state has with the communications are of no moment. Comment d to section 139 instructs us to look at the number and nature of the contacts that the forum state has with the parties and with the transaction involved. In Allen, for instance, we did not examine the relationship between the forum and the communication in analyzing this factor. Allen, 336 Ill. App. 3d at 460. Instead, we followed the plain language of Comment d and examined the forum's relationship with the parties and the situs of the accident. Allen, 336 Ill. App. 3d at 460. Had the drafters of the Restatement intended this factor to look at the relationship between the forum and the communication, they would have said so. Turning, then, to the forum's contacts with the parties, we note that one insurer, Lumbermens, is an Illinois corporation.

The Restatement also instructs us to look at the number and nature of contacts the forum state has with the transaction. The insurance policies in this case were issued by insurers located around the globe. As noted in the preceding paragraph, one of these insurers is an Illinois corporation. In addition, Allianz points to the following contacts between Illinois and the policy it issued to Guidant: (1) the policy was negotiated in Illinois; (2) Guidant retained an Illinois broker, Aon Risk Specialists, Inc., of Illinois (Aon Risk), to procure the policy out of its Illinois offices; (3) Aon Risk was the "conduit" by which Guidant conveyed what Allianz alleges were fraudulent insurance applications; (4) the policy was underwritten by Allianz in its Chicago office before being issued and renewed; and (5) Guidant's risk manager (the person who was principally responsible for working and communicating with Allianz and Aon Risk) worked out of her home in Naperville. Thus, Illinois has contacts with both a party and with the transaction involved.

For the most part, Guidant does not challenge Allianz's position with respect to the contacts with Illinois. However, relying on Whirlpool Corp. v. Certain Underwriters at Lloyd's London, 295 Ill. App. 3d 828, 838 (1998), Guidant does argue that the importance of an insurance broker's location "has been rejected." Whirlpool is inapposite to this case, as its discussion regarding the broker's contact with the forum involved a forum non conveniens analysis. Moreover, the Whirlpool court did not state that the location of an insurance broker would never be important. The court merely found that Illinois's connection with the controversy was "thin" because its only link to the litigation was the fact that an Illinois insurance broker acted as a "conduit for money and information" between the plaintiff and another insurance broker. Whirlpool, 295 Ill. App. 3d at 838-39. In this case, Illinois's contacts are both more numerous and more significant than the contacts in Whirlpool. Accordingly, we conclude that the first factor mitigates against giving effect to the privileges of a state other than the forum.

The second factor, the relative materiality of the evidence sought to be excluded, also favors admission of the materials requested in Allianz's motion to compel. Comment d of section 139 of the Restatement (Restatement (Second) of Conflict of Laws §139, Comment d (1971)) suggests that the forum state will be more likely to recognize a foreign privilege and exclude evidence "if the facts that would be established by this evidence would be unlikely to affect the result of the case or could be proved in some other way." In this case, Allianz seeks the materials requested in the motion to compel in order to learn who at Guidant knew what and when regarding the potential exposure for a defect in the Ancure Device. If such evidence shows that Guidant knew of potential claims prior to applying for the insurance policies, it could affect the outcome of the case. Absent some

admission by Guidant to this fact, we can conceive of no other way to prove this claim. Accordingly, this factor favors Allianz's position.

The third factor, the kind of privilege involved, requires us to examine whether the privileges involved are well established. Restatement (Second) of Conflict of Laws §139, Comment d (1971); Allen, 336 Ill. App. 3d at 460-61. The attorney-client privilege is recognized in every state, either by common law or by statute. N. Swinton, Privileging a Privilege: Should the Reporter's Privilege Enjoy the Same Respect as the Attorney-Client Privilege?, 19 Geo. J. Legal Ethics 979, 983 (2006); U. Weigold, The Attorney-Client Privilege as an Obstacle to the Professional and Ethical Development of Law Students, 33 Pepp. L. Rev. 677, 703 (2006). In addition, all 50 states recognize some form of the work-product doctrine. R. Fiechtl, Know When to Hold 'Em: Minimizing Disclosure of Corporate Environmental Information, 31 Envtl. L. 951, 960 (2001). However, as noted previously, the discovery-oriented scope of these privileges adopted by our supreme court in Waste Management has not been widely followed in other jurisdictions. Given the lack of acceptance of Waste Management in other jurisdictions, we find that this factor favors Guidant.

With respect to the fourth factor, the fairness to the parties, the Restatement advises that the forum will be more inclined to give effect to a privilege if it was probably relied upon by the parties. Restatement (Second) of Conflict of Laws §139, Comment d, at 388 (1971). Guidant claims that at the time the communications requested by Allianz were made and the work product was created, it and its attorneys "had an expectation that the information was protected from disclosure" and that it "could not have reasonably anticipated that Illinois law would affect its protected status." We find no contrary evidence in the record. As such, we find that this factor favors Guidant's position.

In sum, our analysis reveals that two factors favor Guidant's position and two factors favor Allianz's position. Under such circumstances, we cannot say that there is some "special reason" for overriding Illinois's policy favoring the admission of such evidence. See <u>Allen</u>, 336 Ill. App. 3d at 461. In fact, our holding in this case promotes Illinois's discovery-oriented view of the attorney-client privilege and the work-product doctrine. See <u>Sterling Finance</u>, 336 Ill. App. 3d at 455 ("In view of the fact that Illinois does recognize the [attorney-client] privilege, in the first instance, but construes it strictly in the corporate context, we cannot foresee any situation where a special reason would exist not to give effect to this clear, strongly articulated policy in favor of another state's broader corporate attorney-client privilege"). Therefore, we conclude that the trial court did not err in granting the motion to compel and in determining that our supreme court's mandate in <u>Waste Management</u> bars application of the attorney-client privilege and the work-product doctrine in this case.

6. <u>Is Waste Management Distinguishable?</u>

Guidant next argues that even if Illinois law is applied, the trial court erred in relying on <u>Waste Management</u>, because that case is distinguishable for various reasons. We address each in turn.

a. Attorney-Client Privilege

i. <u>Common Interest</u>

Guidant asserts that, in this case, unlike <u>Waste Management</u>, there is no "common interest" between it and Allianz requiring production of the documents requested in the motion to compel. Guidant argues that when the insurers in <u>Waste Management</u> were presented with the insureds' claim for coverage of the underlying litigation, the insurers did not "deny coverage" or otherwise

demonstrate "any intent to abandon its insured." In contrast, Allianz in this case "denied the very existence and enforceability of any contractual relationship between the parties" by "disclaim[ing] all coverage under the policies at issue" and by seeking to rescind the policy on the basis of fraud. According to Guidant, Allianz cannot simultaneously seek to avoid covering Guidant on the ground that the parties have no contract and obtain discovery of the requested materials on the ground that the parties' privity of contract creates a "special relationship" that suspends the usual rules of privilege. We find Guidant's attempt to distinguish <u>Waste Management</u> on this basis unavailing.

First, Allianz did not "deny" coverage in a procedural sense. Rather, it "disclaim[ed] coverage" and filed a declaratory judgment action to confirm its coverage decision. Indeed, this procedure is consistent with Illinois law. For instance, in <u>Insurance Co. of Illinois v. Markogiannakis</u>, 188 Ill. App. 3d 643, 652 (1989), the court outlined four approaches for an insurer wishing to challenge coverage under a policy. First, the insurer may seek a declaratory judgment regarding its obligations <u>before or pending</u> trial of the underlying action. Second, the insurer may defend the insured under a reservation of rights. Third, the insurer may refuse either to defend or to seek a declaratory judgment. Fourth, the insurer may concurrently seek a declaratory judgment and defend under a reservation of rights. In this case, Allianz invoked option number one. Indeed, the supreme court endorsed Allianz's approach in <u>Waste Management</u>, where it remarked that "a denial, when alleged in the pleadings or which precedes a promptly filed complaint for declaratory action, is not tantamount to a repudiation of the policy obligations." <u>Waste Management</u>, 144 Ill. 2d at 206. The supreme court reasoned that a contrary conclusion "would negate the protections for

which the declaratory judgment action is designed and ultimately penalize insurers for conduct which [it has] previously sanctioned as proper." Waste Management, 144 Ill. 2d at 206.

Moreover, the distinction between "disclaimer" and "denial" notwithstanding, the Waste Management court did interpret the insurers' conduct in that case as a "denial." The court repeatedly referenced the insurers' "denial" of coverage. Waste Management, 144 Ill. 2d at 186-87. Furthermore, Guidant's suggestion that a "denial of coverage" is tantamount to a total abandonment of the insured and destroys any "common interest" is not supported by Illinois law. The Waste Management court makes clear that an insurer does not "abandon" its insured by seeking a declaration of the parties' respective rights and obligations under an insurance policy. Waste Management, 144 Ill. 2d at 207. An insurer will be deemed to have abandoned its insured only when it "wrongfully denied coverage *** without resort to the courts for a declaration of [its] rights and obligations under the terms of the insurance agreement[]." (Emphasis added.) Waste Management, 144 Ill. 2d at 207 (and cases cited therein). In this case, Allianz has not "abandoned" Guidant. There is no finding that it "wrongfully denied coverage." Instead, Allianz followed Illinois law by disclaiming coverage and then promptly seeking a declaration of its rights and obligations in court. Waste Management, 144 Ill. 2d at 207; Insurance Co. of Illinois, 188 Ill. App. 3d at 652.

Guidant also claims that the trial court's finding of a "common interest" is erroneous because the underlying claims against the insureds in Waste Management had been concluded when the insureds were ordered to produce defense files, whereas in the present case, some of the Ancure Device claims remain pending. Aside from the fact that Guidant's claim lacks any authority, it is also inconsistent with Illinois law. The Waste Management court stated that insureds remain obligated

to produce their underlying defense files "as long as the insureds seek to enforce" the terms of the insurance contract that forms the basis of the insureds' request for insurance. Waste Management, 144 Ill. 2d at 192; see also Sharp v. Trans Union L.L.C., 364 Ill. App. 3d 64, 68 (2006) (applying Waste Management holding to lawsuits "currently pending"). In this case, although the parties' interests may have become adverse in the midst of the litigation of the underlying claims, until there is a declaration to the contrary, the Insurers continue to bear potential responsibility for settlement and litigation costs in the underlying action. Thus, the attorneys representing Guidant in pending actions continue to represent both parties' common interest in settling or defending the underlying claims. See Waste Management, 144 Ill. 2d at 209.

Guidant also claims that it "is possible that a court in which one of the Underlying Claims is pending could even hold that Guidant's disclosure of its privileged documents to *** its Insurers *** is a waiver of privilege." Guidant cites no authority for this proposition. We merely note that any disclosure would come only after Guidant objected, was held in contempt, and appealed the matter. Moreover, Waste Management demonstrates that the documents would still enjoy privileged status as to the plaintiffs in the underlying litigation even after Guidant produces those files to Allianz. Waste Management, 144 Ill. 2d at 209.

### ii. Duty to Cooperate

Guidant also disputes the applicability of the holding in Waste Management on the notion that it has a "duty to cooperate" with Allianz. Guidant's argument is twofold. First, Guidant claims that a party to a contract cannot both repudiate the contract's very existence and continue to assert a duty on the other party to continue performance. Second, Guidant claims that even if Allianz were

permitted to both repudiate the parties' contract and continue to assert its rights under it, Allianz cannot suspend performance of its obligations but insist that Guidant continue to perform its own.

Guidant's first argument--that the existence of a rescission claim is tantamount to an admission that there is no valid contract--is based on a faulty premise. In Illinois, the "remedy of rescission presumes that a valid contract exists; it does not negate that a contract ever existed." Cusamano v. Norrell Health Care, Inc., 239 Ill. App. 3d 648, 653 (1992). Guidant's second argument has already been rejected by our supreme court. In Waste Management, the court stated:

> "We note that as a practical matter, since the parties are adverse for purposes of the declaratory judgment proceedings, each may have suspended performance of their contractual obligations. However, the fact that the request for the defense litigation files now arises in the context of discovery during a declaratory judgment action neither narrows nor extinguishes the contractual obligations of the parties. The contractual duties are continuing." Waste Management, 144 Ill. 2d at 208.

Likewise, here, even if the parties may be said to have temporarily suspended performance of their contractual obligations, Waste Management instructs that this does not negate the parties' duty to cooperate.

### iii. Fraud

Guidant next asserts that Waste Management does not apply to an insurer's allegations of fraud by its insured. Guidant notes that the trial court's express acknowledgment that Waste Management, unlike this case, did not involve claims for fraud or fraud in the inducement should have led the trial court to reject outright Allianz's motion to compel. Allianz responds that the fact

that its complaint includes allegations of fraud does not take it outside the realm of Waste Management. Further, Allianz asserts that the Waste Management rationale was recently applied to a case involving an insurer's allegations of misrepresentations by its insured. Sharp, 364 Ill. App. 3d 64.

Initially, we find Sharp factually distinguishable from the present case. Sharp did not involve any allegations of policyholder fraud, concealment, or misrepresentation in procuring the policy. Rather, the Sharp court permitted discovery of specific knowledge of the insured's general counsel because the policy was specifically negotiated and written "to require the disclosure of [the insured's] general counsel's knowledge, work product, and communications regarding the pre-policy litigation." Sharp, 364 Ill. App. 3d at 72. The Sharp court's holding was supported by Illinois's discovery-oriented policy and the notion that the scope of the relationship between an insurer and its insured is "defined and controlled by the insurance policy." Sharp, 364 Ill. App. 3d at 71. Despite the factual dissimilarities between this case and Sharp, its rationale and the policy reasons behind the decision (which rely heavily on Waste Management) persuade us that the trial court's decision compelling production of the sought-after documents was correct.

As the Sharp court emphasized, "[i]n the context of the relationship between insurer and insured, Illinois 'adhere[s] to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit.' " Sharp, 364 Ill. App. 3d at 71, quoting Waste Management, 144 Ill. 2d at 190. The privileges that Guidant insists shield discovery of the materials requested in the motion to compel are merely narrow exceptions to this pro-discovery policy. See Waste Management, 144 Ill. 2d at 190; Sharp, 364 Ill. App. 3d at 71. Guidant cites no authority in its brief that the presence of a fraud claim in an insurer's declaratory

judgment action requires us to disregard the supreme court's holding in <u>Waste Management</u>. Indeed, doing so would ignore this state's discovery-oriented stance.

### b. Work Product

In a related argument, Guidant asserts that even if <u>Waste Management</u> were applicable to Guidant's claims of attorney-client privilege, it is still entitled to invoke the work-product doctrine. Guidant notes that the work-product doctrine has been construed to provide broader protection than the attorney-client privilege. <u>Waste Management</u>, 144 Ill. 2d at 196. According to Guidant, the <u>Waste Management</u> court found that the insureds could not assert the work-product doctrine because counsel's work product was prepared for the mutual benefit of the insureds and insurers and placed "at issue" by the insureds. Guidant represents that the same is not true in this case. Guidant reiterates its previous claim that its attorneys' work product was not prepared for Allianz's benefit. However, because Allianz is not an adversarial party in the underlying claims, the attorneys' trial strategies and opinions concerning the underlying claims do not require protection from Allianz. See <u>Waste Management</u>, 144 Ill. 2d at 197-98. Furthermore, as Allianz may bear the ultimate burden of payment of the underlying claims, the attorneys' strategies and opinions devised to refute the underlying claims were and continue to be prepared for the benefit of both the Insurers and the insured. See <u>Waste Management</u>, 144 Ill. 2d at 197-98. Thus, for reasons similar to those articulated in our common-interest analysis, the work-product doctrine is not available to bar discovery of the documents requested in Allianz's motion to compel.

### B. Limitation

Guidant next asserts that even if the court's order was otherwise correct, the court erred in placing an "insufficiently narrow limit on the Insurers' use of the compelled documents." We

disagree, as the limitation imposed was exactly what Guidant requested. Notably, Guidant urged the court to "take all necessary steps to prevent the slippery slope application of Waste Management to common-law fraud or rescission cases." The court took Guidant up on its request. The court prevented the Insurers from using any compelled documents in the common-law fraud count and limited the use of those documents solely to the declaratory judgment claims. As such, we reject this argument.

## C. Status of Contempt Order

Finally, Guidant posits that regardless of the outcome of this appeal, we should vacate the trial court's finding of contempt and the accompanying fine because it acted in "good faith" in seeking review of the order and privileges in question. "A contempt proceeding is an appropriate method for testing the correctness of a discovery order." In re D.H., 319 Ill. App. 3d 771, 773 (2001). Thus, where an individual appeals a contempt judgment imposed for violating a discovery order, the discovery order is subject to review. In re D.H., 319 Ill. App. 3d at 773. Where a party's refusal to comply with a trial court's order constitutes a good-faith effort to secure an interpretation of the privileges in question, it is appropriate to vacate a contempt citation on appeal. Cangelosi v. Capasso, 366 Ill. App. 3d 225, 230 (2006). Although we do not agree with Guidant's argument that the trial court's order should be reversed, we do agree that, in light of the almost universal rejection of Waste Management, the grounds posed by Guidant for questioning the trial court's order were reasonable and that its refusal to comply with the trial court's order constituted a good-faith effort to secure an interpretation of the privileges in question. For this reason, we find it appropriate to vacate the contempt citation and the accompanying fine.

## D. Other Insurers' Arguments

Zurich, Gerling, Liberty, AISLIC, Westchester, and Lumbermens filed a separate brief in which they "join, adopt and incorporate by reference the appellee brief filed by Allianz." They also make an additional argument. They claim that Guidant has waived its rights to cite any part of the record or to make any factual arguments relating to them because Guidant "ignore[d]" them in the course of its arguments challenging the trial court's order. Given our ruling in favor of the Insurers in this appeal, we opt not to address this argument.

### III. CONCLUSION

For the foregoing reasons, the discovery order of the circuit court of Du Page County is affirmed. The contempt citation and accompanying fine are vacated.

Discovery order affirmed; contempt order vacated.

HUTCHINSON and KAPALA, JJ.,[6] concur.

---

[6]Justice Kapala resigned from this court effective May 9, 2007. Prior to his resignation, Justice Kapala fully participated in the decision of the court. See Proctor v. Upjohn Co., 175 Ill. 2d 394, 396-97 (1997) (holding that departure of appellate judge prior to filing of decision does not affect decision's validity as long as the remaining two panel members agree upon a disposition); Cirro Wrecking Co. v. Roppolo, 153 Ill. 2d 6, 17-19 (1992) (holding that departure of appellate judge prior to the date the clerk of the court enters disposition does not affect the disposition's validity where three judges participated in the decision and remaining two judges agree on disposition).